IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 C 4042 |
| v. ) | (02 CR 1056-1) |
| ) | Suzanne B. Conlon, Judge |
| DARNELL MURRY ) | |

## MEMORANDUM OPINION AND ORDER

Darnell Murry was convicted of one count of transporting fraudulently obtained merchandise across state lines, in violation of 18 U.S.C. §§ 2314, and 2 and one count of obtaining goods valued at over $1000 through the unauthorized use of an access device, in violation of 18 U.S.C. §1029(a). The Seventh Circuit affirmed his conviction, but remanded for a recalculation of restitution. *United States v. Murry*, 395 F.3d 712 (7th Cir. 2005), *cert. denied*, 127 S.Ct. 3064 (2007). On Murry's second appeal, following this court's restitution adjustment, the Seventh Circuit affirmed Murry's sentence. *United States v. Murry*, 207 Fed. Appx. 690, 691 (7th Cir. 2006). Murry, proceeding *pro se*, challenges his conviction and sentence under 28 U.S.C. §2255, alleging ineffective assistance of counsel, sentencing errors, and violation of his Fifth Amendment right to freedom from self-incrimination.

## BACKGROUND

The following facts are drawn from the 2005 opinion that affirmed Murry's conviction (*Murry*, 395 F.3d 712) unless otherwise noted.

I. **Murry's Scheme**

Murry perpetrated an identity-theft scheme. First, he added himself to victims' Home

Depot, Wal Mart, or Sam's Club credit card accounts as an authorized user. Then he charged purchases to those accounts, either in person or over the phone. Between March 28, 2002 and October 31, 2002, Murry used 25 different victim accounts to purchase or attempt to purchase over $250,000 of merchandise.

Murry had at least two accomplices. His cousin, Horatio Jones, picked up Murry's phone orders; and his co-defendant, Kwonnie Stanciel, helped Murry fence fraudulently obtained merchandise. Arrested trying to pick up hardwood flooring Murry had ordered, Jones agreed to cooperate with the government's investigation. Jones recorded telephone conversations in which Murry instructed him to pick up fraudulently purchased merchandise. On October 31, 2002, Murry and Stanciel accompanied Jones to collect a $12,000 order of hardwood flooring at an Indiana Home Depot. Federal agents witnessed the transaction and arrested Murry shortly thereafter.

## II.    Evidence Introduced Against Murry at Trial

The Seventh Circuit found that the government's evidence against Murry "left little to the imagination." *Murry*, 395 F.3d at 716. A non-exhaustive recitation of that evidence follows.

Two of the defrauded account holders testified that they never made the purchases in question, did not know Murry, and never authorized him to use their credit accounts. Murry stipulated that all other account holders would testify similarly, thereby establishing that all relevant purchases were unauthorized.

A Home Depot loss-prevention employee testified that he observed and videotaped Murry buying several expensive tools—including multiple numbers of the same tool—using a fraudulently obtained credit card. The government introduced the receipt from that purchase,

which totaled around $1400. It also introduced a videotape showing Murry making another fraudulent purchase with the same credit card, along with the receipt from that transaction. On that receipt, at the time of the purchase, a Home Depot clerk recorded Murry's driver's license number.

Jones testified that he picked up orders from Home Depot stores in four states on Murry's instructions. The government introduced order forms corresponding to each of the purchases Jones picked up; the purchases totaled over $80,000. Each form bore Jones' signature; and each reflected that the order it documented was placed from a phone linked to Murry and charged to a victim's account. The government also introduced tapes of the conversations Jones had with Murry arranging pickups of fraudulently purchased merchandise.

A Sam's Club employee testified that, when Murry added himself to a victim's credit card account by completing a form at the store, the employee photocopied Murry's driver's license. The government introduced both the form and the photocopy of Murry's driver's license into evidence.

Another Sam's Club employee witnessed Murry attempting to purchase merchandise with a membership card bearing a victim's name and Murry's photograph. When she told Murry she needed her manager's approval to complete the purchase, Murry left the store, leaving the fraudulent membership card behind. That card was admitted into evidence at trial, as were seven photographs of Murry taken by Sam's Club employees when Murry added himself to other victim accounts.

The government proffered four incriminating documents bearing Murry's fingerprints: (1) an order form bearing Murry's cell phone number that Jones used to pick up fraudulently

3

purchased Home Depot merchandise; (2) a Sam's Club receipt charging $1911.26 worth of merchandise to a victim's account; (3) another receipt documenting an unauthorized purchase; and (4) an application form Murry completed to add himself to a victim's account.

In all, the government introduced over 220 exhibits into evidence, among them receipts from Murry's fraudulent purchases totaling over $240,000. As the Seventh Circuit summarized, "[t]he links between Murry and the fraudulent purchases were numerous." *Murry*, 395 F.3d at 716.

### III. Government Exhibits 222 and 223

Along with the evidence described above, the government proffered two charts labeled Government Exhibits 222 and 223, respectively. Government Exhibit 222 summarized Murry's fraudulent Home Depot purchases, and Exhibit 223 summarized his fraudulent Sam's Club purchases. Kellie Meador, a fraud investigation coordinator for GE Capital, which managed the credit programs Murry exploited, prepared these charts based on GE Capital business records. While the government did not proffer the underlying records Meador reviewed, it did introduce a receipt or order form corresponding to each transaction listed on Government Exhibits 222 and 223. Meador testified that both exhibits were summaries of GE Capital documents kept in the ordinary course of business by persons with knowledge of the information, and were made at or near the time of the events they described. Tr. at 127-28. She also testified that the exhibits accurately summarized the records she reviewed. *Id.* When the government offered these summary charts into evidence, Murry's attorney stated, "No objection, your Honor." Tr. at 128.

## IV. Jury Instruction Regarding Summary Exhibits

A jury instructions was given regarding the accuracy of summary exhibits: "Summaries were admitted into evidence. The summaries truly and accurately summarize the contents of voluminous records, books, and documents and should be considered together with and in the same way as all the other evidence." Tr. at 458. The court previously gave Murry's counsel an opportunity to object to proposed instructions. He replied, "Judge, I don't object to anything." Tr. at 409. Moments later, the court again asked whether Murry's counsel agreed with the jury instructions. Murry's counsel replied, "I do agree. That's fine. Yes, your Honor." Tr. at 414.

## V. Murry's Sentencing Hearing

At sentencing, in addition to its other evidence, the government relied on three summary exhibits: Government Exhibits 222 and 223, and a Sentencing Summary Chart. *See* Sentencing Tr. at 2-3; Opp. Mot. at 11. The Sentencing Summary Chart contained all the data from Government Exhibits 222 and 223, plus data from other transactions. Opp. Mot. at 11. The court asked whether Murry's attorney objected to the admissibility of any of these charts. Sentencing Tr. at 3. Murry's attorney replied, "Judge, no, those were summaries of the documents. So as far as the admissibility, I would have no basis for an objection for that." *Id.* The Seventh Circuit found that the trial and sentencing hearing transcripts "make clear that Murry's attorney knew he could object to the admission of the summary charts and purposefully declined to do so, in the latter instance also expressing the belief that he had no good faith basis to object." *Murry*, 395 F.3d at 718.

The court sentenced Murry to 125 months of incarceration and imposed restitution in the amount of $647,045.22. Sentencing Tr. at 25-26. The court noted several aggravating factors,

5

including the financial magnitude of Murry's crimes, the incalcuable damage Murry inflicted on the individual victims, his criminal background, and the likelihood of recidivism. *Id.* at 25.

## VI. Murry's Appeals

Murry appealed his conviction and his sentence, arguing (1) the court erred in instructing the jury that Government Exhibits 222 and 223 accurately reflected the records summarized, and (2) the court abused its discretion by admitting Government Exhibits 222 and 223 because the underlying documents were not produced in discovery and the foundation for the summaries was insufficient. *Murry*, 395 F.3d at 716. The Seventh Circuit concluded that the record did not indicate whether the government made the records underlying Government Exhibits 222 and 223 available to Murry or not. *Id.* at 718. But it found that Murry waived both of his arguments regarding the summary charts. *Id.* at 717, 719. It affirmed Murry's conviction, remanding the case for an adjustment to the amount of restitution Murry owed. *See id.* at 721-22.

Upon remand, this court found the government's Sentencing Summary Chart unreliable for the purpose of calculating restitution. Restitution Tr. at 32-33. But the court explicitly rejected Murry's argument that, given its refusal to rely on the Sentencing Summary Chart in calculating restitution, the court should reduce Murry's prison sentence, which was partially based on a loss calculation derived from that chart. *See id.* at 33-35. Advancing that argument again, Murry mounted his second appeal, arguing that, given the "unreliability" of the Sentencing Summary Chart, the trial court should have reduced Murry's sentence, as well as his restitution. *See Murry*, 207 Fed. Appx. at 691. But the Seventh Circuit affirmed this court's decision. *Id.*

## DISCUSSION

I.   **Legal Standards**

Under § 2255, a federal convict can move to vacate, set aside, or correct his sentence if he has suffered a constitutional injury or if his trial resulted in a "complete miscarriage of justice." *United States v. Dumeisi*, No. 06 C 4165, 2006 WL 2990436 at *3 (N.D. Ill. Oct. 17, 2006) (Conlon, J.). When deciding whether to grant a § 2255 motion, the court should draw all reasonable inferences from the evidence in a light most favorable to the government. *Ruiz v. United States*, 446 F.Supp.2d 921, 925 (N.D. Ill. 2006) (Norgle, J.).

A § 2255 motion is not an alternative to a direct appeal. *Dumeisi*, 2006 WL 2990436 at *4. Accordingly, a § 2255 movant cannot raise (1) issues he raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that he could have raised on direct appeal, but did not; or (3) constitutional issues he failed to raise on direct appeal, unless he shows both cause for that failure and resulting prejudice. *Id.*

II.  **Analysis**

    A.   **Ineffective Assistance of Counsel**

A defendant may raise an ineffective assistance of counsel claim in a § 2255 motion regardless of whether he raised it on appeal. *Id.* Murry claims his counsel failed to provide effective assistance for three reasons: (1) his counsel failed to object to the admission of Government Exhibits 222 and 223 into evidence; (2) his counsel failed to object to the use of a jury instruction affirming the accuracy of these summary charts; and (3) his counsel failed to object to the summary exhibits used at his sentencing hearing. Mot. at 5, 7.

A movant must pass an "arduous" test to prevail on an ineffective assistance claim. *United States v. Gilmore*, No. 98 C 1661, 1999 WL 262151, at *5 (N.D. Ill. Apr. 22, 1999)

7

(Kocoras, J.)). First, he must show that his counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the movant must prove that his attorney's errors prejudiced his defense and, as a result, "the trial cannot be relied upon as having produced a just result." *Id.* at 686-87. In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692. Thus, Murry must prove that his attorney's errors undermine the verdict, and detrimentally affect the outcome. *Id.* at 693.

A movant must satisfy both prongs of the *Strickland* test to prevail on an ineffective assistance claim. As a consequence, "there is no reason for a court . . . to address both [prongs] . . . if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. An analysis of the prejudice requirement is dispositive of Murry's claims. Therefore, the court need not address whether counsel's performance was reasonable.

### 1. Failure to object to Government Exhibits 222 and 223

Murry argues he received ineffective assistance because his attorney failed to object to the admission of Government Exhibits 222 and 223, despite knowledge that the underlying documents were neither admitted into evidence at trial nor produced in discovery. Murry also alleges his attorney had a document, "DM 0440," that would have proven the inaccuracy of Government Exhibits 222 and 223 and the Sentencing Summary Chart, but was "scared" to present it to the court. Mot. at 6.

The government counters that Government Exhibits 222 and 223 were properly admitted into evidence. The government also notes that, because Murry never objected to the admission of

8

those Government Exhibits, it did not have an opportunity to disprove Murry's claim that the documents underlying them were not produced.

The documents underlying Government Exhibits 222 and 223 were not admitted into evidence; but they did not have to be. Fed. R. Ev. 1006 allows a court to admit into evidence summaries of "voluminous writings . . . which cannot conveniently be examined in court," provided that all parties have had an opportunity to examine the documents summarized. *Id.* Rule 1006 does not require admission of the documents underlying a summary exhibit; indeed, the rule's purpose is to obviate the admission of voluminous documents. Committee Comment to 7th Cir. Pattern Crim. Fed. Jury Instruction 3.15. An objection to Government Exhibits 222 and 223 because the underlying documents were not in evidence would have been meritless and would not have influenced the outcome of Murry's trial.

Murry claims that the documents underlying Government Exhibits 222 and 223 were never produced in discovery. Mot. at 5. Rule 1006 requires that all parties have the opportunity to examine documents underlying summaries. *Id.* But the record does not establish—and Murry offers no extrinsic evidence to show—that he was deprived of that opportunity. *See Murry*, 395 F.3d at 718. Murry fails to show that an objection would have any factual basis. He fails to establish a reasonable probability that the outcome of his trial would have been different had his attorney made an objection.

Murry provides no support for his assertion that his attorney had a document, "DM 0440," that would have proven the inaccuracy of Government Exhibits 222 and 223 and the Sentencing Summary Chart. Nor does he provide any evidence to support his allegation that his attorney refused to present DM 0440 to the court because he was "scared." Murry also fails to

9

attach DM 0440 or to describe its contents. Thus, he shows neither that DM 0440 belied the government's summary exhibits, nor that his attorney's decision not to offer DM 0440 prejudiced him.

Even if the court had sustained an objection to Government Exhibits 222 and 223, the government's other evidence amply supports Murry's conviction. As the Seventh Circuit noted, and as the facts outlined above show, "[t]he links between Murry and the fraudulent purchases were numerous," and the evidence against him "left little to the imagination." *Murry*, 395 F.3d at 716. While the government did not proffer the records underlying Government Exhibits 222 and 223, it introduced a receipt or order form corresponding to each transaction listed on those charts; subtracting the summaries from the government's proof would not have substantially altered the overwhelming weight of evidence against Murry. Murry fails to establish that he was prejudiced by his attorney's decision not to object to Government Exhibits 222 and 223. His ineffective assistance claim on that ground fails.

### 2. Failure to object to jury instruction

Murry argues he was denied effective assistance of counsel because his attorney did not object to the jury instruction affirming the accuracy of Government Exhibits like 222 and 223. Murry claims the instruction was inappropriate because he never "personally" stipulated to it. The government responds that the instruction was appropriate because it followed the Seventh Circuit Pattern Jury Instruction for valid Rule 1006 summaries.

As a threshold matter, Murry's attorney explicitly agreed to the summary chart instruction, therby waiving the issue on Murry's behalf. *Murry*, 395 F.3d at 716-17 (quoting Tr. at 409-14). Murry's assertion that he never "personally" stipulated to the instruction is therefore

10

unavailing. Murry fails to show he was prejudiced by his counsel's decision not to object. First, the instruction was appropriate. It followed Seventh Circuit Pattern Criminal Federal Jury Instruction 3.15, which is properly given when Rule 1006 summaries have been admitted into evidence. *See* Committee Comment to 7th Cir. Pattern Crim. Fed. Jury Instruction 3.15. Second, for the reasons discussed above, the government introduced ample evidence to produce a reliable outcome. Murry fails to establish prejudice based on the belatedly challenged jury instruction.

### 3. Failure to object to summary exhibits at sentencing hearing

On grounds three and seven of his motion, Murry claims he was denied effective assistance of counsel because his attorney failed to object to the summary exhibits used at sentencing. Murry asserts an objection was appropriate given his assertion that the government did not produce the documents underlying the exhibits, and because the trial court found the Sentencing Summary Chart unreliable. The government argues that the summary exhibits were properly considered during the sentencing hearing.

First, as explained above, the record does not establish that Murry was deprived of an opportunity to examine the documents underlying the government's summary charts. *See Murry*, 395 F.3d 712, 718 (7th Cir. 2005). Murry has failed to show that an objection to those exhibits would have merit. He has failed to establish that his attorney's decision not to make such an objection prejudiced him.

Murry's argument that his attorney should have objected to the sentencing exhibits because the trial court found them unreliable is also fundamentally misguided. The court only found the government's summary unreliable for the limited purpose of calculating restitution. Restitution Tr. at 33-35; *Murry*, 207 Fed. Appx. at 691. It did not find the summary charts

11

unreliable for determining the loss calculation related to sentencing.

Second, Murry's argument is anachronistic. The court found the government's summary unreliable for calculating restitution at Murry's May 13, 2005 restitution rehearing, which took place almost two years after the May 21, 2003 sentencing when Murry claims his attorney should have objected. *See* Sentencing Tr. at 1; Restitution Tr. at 1, 32-33. Murry's attorney could not have objected on grounds that did not yet exist.

Finally, the aggravating factors that augmented Murry's sentence—the financial magnitude of his crimes, the incalcuable damage he inflicted on individual victims, his criminal background, and the likelihood of recidivism (Sentencing Tr. at 25)—were amply supported by evidence other than the summary charts. For these reasons, Murry has failed to show that he was prejudiced by his attorney's decision not to object to the summary charts at sentencing.

### B.     Sentencing Error Claims

Murry challenges the reasonableness of his sentence on grounds four, six, and eight of his motion. On ground four, he contends his sentence is 95 months longer than it should be because the court miscalculated enhancements. Mot. at 6. On ground six, he argues that sentence enhancements based on his leadership role in the scheme and his use of five or more fraudulent means of identification were improper because they were based on the Sentencing Summary Chart that the court found unreliable. On ground eight, Murry claims his sentence was too harsh because it was based on Government Exhibits 222 and 223 and the Sentencing Summary Chart. The government counters that Murry's failure to raise these issues on direct appeal renders them waived.

First, it is improper to raise a non-constitutional challenge to a court's application of

12

sentencing guidelines on a §2255 motion. *Dumeisi*, 2006 WL 2990436 at *8. Murry's sentencing claims are non-constitutional, and thus improper.

Second, Murry's sentencing claims run afoul of the rule that a § 2255 movant may not raise (1) issues he raised on direct appeal, absent a showing of changed circumstances; or (2) non-constitutional issues that he could have raised on direct appeal, but did not. *Dumeisi*, 2006 WL 2990436 at *4. In ground four of his motion, Murry attacks the court's calculation of enhancements. While the Seventh Circuit held Murry's sentence "within the Guideline range" (*Murry*, 207 Fed. Appx. at 690), this attack fails for another reason. Murry has filed two appeals since imposition of the sentence he presently challenges; but he raises the issues in ground four for the first time. Because he failed to raise his ground four arguments on appeal, they are barred.

In ground six, Murry contends two enhancements to his sentence, based on his leadership role and his use of five or more fraudulent identifications, were inappropriate because they were based on the government summary chart that the court found unreliable. As explained above, the court's finding that the government summary chart was unreliable for restitution purposes did not affect its loss calculations. Second, Murry did not raise this issue in his second appeal. His ground six argument is thus barred.

In ground eight, Murry resurrects two arguments that he raised unsuccessfully on appeal. First, he attacks his sentence because it is based on Government Exhibits 222 and 223. In his first appeal, Murry attacked his conviction on precisely the same ground, arguing that "the trial court abused its discretion by admitting Exhibits 222 and 223 because there was no showing on the record that the government had made the underlying documents available to the defendant for

13

review, and because the foundation for these documents was inadequate." *Murry*, 395 F.3d at 716. The Seventh Circuit found Murry waived this argument by declining to object to admission of those exhibits at trial and to the court's consideration of them at sentencing. *Id.* at 718 (quoting Tr. at 128).

Murry raised his other argument in his second appeal, arguing that, because "the district court . . . found the Government's evidence of loss unreliable in the restitution context[, it] should not credit it in determining the loss under the Guidelines." *Murry*, 207 Fed. Appx. at 691.

### C. Fifth Amendment Claim

In ground five of his motion, Murry contends the jury instruction confirming the accuracy of the government's summary charts violated his right to freedom from self-incrimination. Mot. at 7. He argues that by affirming the accuracy of the exhibits, the instruction "incriminated" him. *Id.* The government contends this argument is simply a constitutionally veneered recapitulation of one the Seventh Circuit found was waived.

Murry's argument misconstrues the self-incrimination clause of the Fifth Amendment, which provides that no one "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. Amend. V. The jury instruction neither compelled Murry to testify against himself, nor did it comment on Murry's decision not to testify. The instruction did not violate the Fifth Amendment. Additionally, the Seventh Circuit found that Murry waived the argument underlying this claim. *Murry*, 395 F.3d at 717.

### CONCLUSION

For the reasons set forth above, Murry's § 2255 motion is denied.

ENTER:

October 25, 2007

Suzanne B. Conlon  
United States District Judge